We will hear counsel in Bull v. UPSGood morning, Your Honors. My name is David Zatucchini of the Law Firm Zatucchini & Associates. On behalf of the plaintiff and appellant, Laureen Bull, if it please the Court, I would like to request three, reserve three minutes for rebuttal time. That's granted. Okay, thank you. Were you counsel in the district court? I was, Your Honor. I was just reading the transcript. Yes. Ms. Bull had her case dismissed by the trial court for a purported discovery violation. What do you mean purported? She didn't show the, didn't produce the documents. There was no, we did produce two separate sets. You didn't produce the original documents. That's right, which were never requested during discovery at any time. Mr. Zatucchini, is it helpful at all for our purposes to divide our consideration of what occurred here between the time from the original controversy, which was handled by the union, up through discovery in the lawsuit to about the time of trial, and then a separate period of time during trial? Because it seems to me that what you both have argued, and the argument may have some real force to it, is that what occurred here was not really a discovery violation and shouldn't be analyzed as a discovery violation, but that what we do have here is at least, and I know you don't agree that there was Excuse me, something's buzzing. Video? Video? Anyway, that the other side would say that what occurred here was actually some wrongdoing with respect to what was required to be produced for trial purposes that would not be covered by the discovery rules. I mean, is that a useful way for us to at least analyze the two sides' contentions here? I think it is useful, Your Honor, all right? And I guess the first point is to address the reason why the district court dismissed Ms. Bull's claim, all right? The district court's motivation was based on its belief that there was some type of discovery violation. And I quote, you know, both at trial and then even once post trial, it was made clear to the court that there was no discovery request, no reference, no mention of seeking the original notes at any time. The court still relied on a purported discovery violation to dismiss Ms. Bull's claim. Assuming for purposes of argument that that's correct, at least that the court assumed a discovery violation, it's also true that what occurred in front of the district court, right in front of it, was a controversy between you and your client. Yes. That she never produced these for you. That's right, Judge. And that you wanted them. This unfolds right in front of the district court while he's got a jury trial in front of him. That's correct, Your Honor. And it was very unfortunate. And what happened at trial, I can – it's not my place to excuse the trial court in any way, but at least from my standpoint, understandable. My understanding from my client is that these originals were not lost. She gave me a lot of original documents. They were all sitting in my car. And you had a trial subpoena that directed her to produce the originals. Well, the trial subpoena itself was a legal nullity. I understand, but you didn't raise that by way of a motion to quash the subpoena, did you? No, but that's – You didn't raise that at any time with the court, even informally, did you? No, the trial – Didn't you have some obligation to do that, to avoid delay and the kind of controversy that occurred here? I don't believe so, Your Honor, because for me to be able to – for me to make a motion to quash a subpoena, the subpoena has to be valid in the first place. At least served the problem, all right? In this case, all right, there was a trial subpoena that was simply emailed to me – Let me again even assume for argument purposes that is correct. What did you think was going to happen at trial if you didn't raise that? Surprise, we don't have the documents, and all of a sudden we've got to declare a continuance so you can find the documents. I don't know of any district judge that would appreciate your having sat back, waited, thinking a subpoena is technically incorrect, and then springing it on everyone in the midst of trial. Well, Judge, I guess the thing is, if I knew that the originals were still somewhere in existence, irrespective of my feeling about the trial subpoena, I still would have had them at court. But you're responsible for your client's failure to produce them. You may have asked her to do so, but you have to – you stand in her shoes. That's correct. Produce them to me, all right, I guess is the issue. So the very worst thing that can be said about my client, okay, is that she did not provide these originals to me. She didn't look for them. She admitted – that's what really got the trial judge upset. She admitted that she didn't look for them. I understand what got the trial judge – No, no, but that's the fact. But the point still remains that, given that, all right, was a dismissal as a sanction for prejudice to defendants, in this case, appropriate? That's a completely different issue. I mean, but I understand if you want to move to that, then you're shifting to assuming that there was wrongdoing. What's an appropriate remedy? Right, but again, just to be clear, what the wrongdoing was, okay? The wrongdoing, to the extent there was wrongdoing, was – No, there was wrongdoing. I think we have to accept the fact that the originals weren't produced. Fine. Let's – accepting that the originals were not produced. Again, what is the effect of the – on the litigation here, all right? The originals were not something that the defendants were ever interested in during the litigation. When defendants counseled to the trial court that they were, were simply mistaken. And the trial court relied on those mistaken statements to believe that these originals were repeatedly, often, properly, validly – and I'm using the trial court's own words – requested during discovery in this litigation, which was simply not the case. Very interestingly, and I will want to hear from UPS counsel on this, since you had shifted to a discussion of remedy, the defense didn't want a mistrial during the course of this trial. It is eminently clear from the transcript that they were trying to back the judge or walk the judge away from a precipitous mistrial. That's right. But after it was declared, they had no choice but to take the position that they took. That's right. And I guess another issue that I have with the trial court – and I understand the trial court's dismay over me telling the trial court that I think – that my understanding is that these notes are no longer existing, that they were destroyed during flooding, and then my client saying something differently in response to a question. I understand that. And it's not until after trial that the originals actually come to the fore. But the trial judge – No, I'm asking. Isn't that correct? That is correct. But she finally looked for them. She finally looked for them very carefully and found them in – well, one of them was in a box in her sister's garage. It doesn't matter where they were. They were within her control, and she found them and hadn't produced them even to you. That's true. But my point still remains that even right then as we were standing there in front of the trial judge, I believe the judge acted very precipitously out of misplaced anger. And he didn't even have – he didn't even give me the chance – I mean, the jury was still sitting there. And all I asked, I said, can we just try to talk to my client outside of the presence of the jury and see what's going on? And the judge was having none of that. Assume there was no discovery violation, but that there was, in the view of the district court properly, some trial-related misconduct in not producing these originals pursuant to the subpoena, and that we were to determine that through his authority, inherent authority, he had the power to impose sanctions for that as opposed to a discovery violation. The mistrial and dismissal, in your view, is the death penalty, and was excessive. What is an appropriate sanction here, then? Your Honor, I think the most – I think the sanction should have been, or the sanction should be now if the court wants to impose one, is that we can't use the originals at trial. That's the sanction because there's no other prejudice to the defendant. Remember, again, and this is a critical point, the judge precipitously mistried the case. This is important. If the judge – if Mr. Bissinger or I with any clarity could get to tell the judge at that point in time, Judge, I'm sorry that I don't have these here. I'm sorry that she didn't look for these. But these were never requested by the defendants during discovery. The subpoena didn't request them? During discovery. The subpoena didn't request them? The subpoena did request them. All right, but again, but just laying that aside for a second. Why do you lay that aside? The point is the subpoena requested them, and they weren't produced. Yeah, but my point, Your Honor, is that the trial judge wasn't relying on the trial subpoena at all when he mistried the case. He thought, all right, that he had to mistry the case because they wanted to conduct a forensic analysis of these original notes. Well, of course, we can affirm a district court for about any reason, even if it's not for the reason that the district court ruled. So I'm not sure that that's a particularly powerful argument. And what's our standard of review of the district court's dismissal? Your standard of review is abuse of discretion. Okay. Okay. I think the point still needs to be made, Your Honor, that – this is an essential point that I'm trying to make. If the judge, if Judge Kavanaugh at that moment in time knew that there was no discovery violation and that they would never have requested these documents during discovery, his entire analysis, all right, would have been different. His analysis then would be, well, you know, how are you prejudiced then by these not being here today, given that you've only asked for them for the first time in a trial subpoena five days ago that you emailed to counsel? Right? What then is the prejudice to you defending? Going through three days of a trial is not – is prejudice? Well, what would be the prejudice of using the copies that we submitted and we're trying to – that's the issue, right? So their whole argument was that they needed to see the originals to conduct a forensic analysis to see if there was some type of fraud with respect to the copies, all right? But if that wasn't an interest of theirs at all during the litigation, it certainly wasn't an interest during the trial, right? The sole objection is simply the best evidence rule, all right? And that is whether the – excuse me. When I was a lawyer, I thought the best evidence rule was a pretty relevant rule. Certainly it's a relevant rule, but if there's good copies available and if the originals are not there, then the court would analyze, well, what is the real prejudice to the defendants here and not having the originals here, given that they've only asked for them in an email for the – Excuse me. Sure. I didn't hear your answer to the question, if this sanction is too severe, what would be an appropriate sanction? Maybe I was making a note and I didn't hear you. Sure. I said the same – I think the – Not using them. Yeah, not using the originals. Okay. Okay. So – and I say that because we did produce all of the relevant copies, two sets of copies. They had those from the very beginning, from the very beginning of the litigation, and that's what we've all used during the litigation, those copies. So just because – I mean, just because they emailed me a trial subpoena, asking for the originals of all medical notes and various other documents, okay, does not mean that my not having those originals at trial, that they were prejudiced in any way as a result of that. Well, we don't know that. They simply were not. Mr. Zatucchini, I have a legal question that goes to the manner in which the district court ultimately analyzed this, and he analyzed it as an issue of spoliation. Now, I would grant, at least in my view, that this is not the classic spoliation case, nor do I know of any case within Third Circuit jurisprudence that finds this type of non-production spoliation. But it seems to me it's also not a stretch to say that it's spoliation. Would you say that the district court properly used spoliation principles to analyze this? And I'd be interested in hearing from Mr. Bissinger on this point as well. I don't believe so, Your Honor. Spoliation deals with not producing or destroying documents in response to valid discovery requests. Well, so you would define it then as something that actually destroys or alters the evidence. Is that your take? Yes, Judge. Because there is case law out there that looks to actual suppression or withholding of evidence as being at least a part of the test. And that's why I'm curious. That's true. But in every such case, there was a valid discovery request during the litigation for the requested materials. I've never seen a spoliation case where materials that were never mentioned, referred, or requested at all by the opposing party during the discovery stage in litigation somehow gives rise to a spoliation inference. Okay. Your time is way up. Okay. I'm sorry, Your Honor. It's all right. We'll get you back on rebuttal. Thank you. May it please the Court. Mike Bissinger, the firm of Day Pitney for Defendant United Parcel Service. Were you trial counsel, Mr. Bissinger? I was, Your Honor. So you are here to argue the propriety of the mistrial that you never, ever wanted. Your Honor, I'll answer that question right now. You have to. I know I do. That's why. I twice, I believe, told the Court that I did not want a mistrial to occur. And the reason I didn't want the mistrial to occur was the very reason why the Court felt compelled to dismiss the case after the mistrial did occur. One, this is a case that we had to prepare for for several weeks. There were multiple witnesses. It's tens of thousands of dollars, several weeks of prep and trial in court. You have 15 people in the court, nine jurors, a federal judge, a sheriff's officer, a court reporter, two lawyers for our side, one lawyer for their side, my client, their client. It's not simply showing up one day and trying the case. Mr. Bissinger, did you ask in discovery for the original documents? I'll answer that question, Your Honor.  Can I finish my response? Well, go ahead. There's two reasons why I asked that the mistrial not occur. The second reason was Ms. Bull had sat for three days and listened to all of my arguments regarding all of the evidential rulings that were made. She got a second big bite of discovery to generate impeachment material. She listened to my opening statement. She sat there through her direct. I did not want her to be given the opportunity to use all of that knowledge to come back now. And the other thing, Your Honor, is if the trial continues, she's not allowed to use either the original or the clear copy of that note because she didn't bring it with her to trial. I didn't even have to send the subpoena. She had an obligation to bring the original document to trial. I had objected to the authenticity of that document at the pre-trial conference in front of Magistrate Judge Schwartz. He knew that I was going to object to that at trial. He said in his briefs in opposition that the authenticity is going to be an issue at trial. Understood. I'll now be even more interested to hear your answer to Judge Slobodur's question. Your question was did I request the documents? Yes. I mean, that's what the brief says you didn't. Here is what happened, Judge. UPS pre-litigation. It seems to me there's a yes or no and then the explanation. My answer would be yes. The September 27, 2006 letter from UPS specifically requested the originals pre-litigation. Pre-litigation, not pursuant to the discovery rules. I then produced that letter. Wait, wait, wait. What? September 27, 2006 letter, which is in the record. I then produced that letter in December 2007 to counsel for Ms. Fuld requesting the originals because we still wanted the originals to see if we could reinstate it back to work. There was a question as to the authenticity of the notes. Yeah. I then sent a subpoena to Mr. Zetouchny prior to trial so that we could avoid. He says inappropriately. He says inappropriately. He had an obligation to have the document there anyway given all of the other objections to the authenticity. I did not want to get to trial and start the trial without it. I wanted to look at the document. I wanted to examine the document before I gave my opening statement. There were a lot of differences in those two doctor's notes from the signature to the boxes that were checked and the fact they were cut off at the exact same place, the faxed versions that we got. I wanted to look at the document. At the original document. At the original document before the trial started. I never got the opportunity to do that. And it's not Mr. Zetouchny's fault. I really, Judge, Mr. Zetouchny was told when we served our discovery responses and our discovery requests, Mr. Zetouchny's brief makes clear that he got those requests and he knew that the originals needed to be at least obtained. He asked his client for them. She said they were lost in a flood. Okay? So she's dishonest with her own lawyer at the beginning of the case and that carries over to the trial because he doesn't ask her about the subpoena, according to his brief, because he believes they were lost in a flood because she lied to him. Then she testifies at trial the first time she's asked, where are the documents? Well, I looked for them and I couldn't find them. Well, that's dishonest as well. Then Judge Kavanaugh. Because she didn't look for them. Because she never looked for them. Then Judge Kavanaugh asked her a third time, did you look for the documents? And she said no. So she continues to lie about whether she even looked for the documents up through the last time that Judge Kavanaugh asked for them. And that is what caused the mistrial. Putting aside whether I subpoenaed the documents or not, I was objecting to the authenticity of those documents throughout the entire case. There would still have been a mistrial. Okay? Because she's not allowed to come in, tell the judge that the documents don't exist. He lets the copy get into evidence as an exception to the best evidence rule and then testifies, well, the original does exist. He would have barred her from using that clear copy because she had an obligation to bring it to trial. That's what would have happened. We never got there because she was dishonest. And you know what, Judge? There is significant prejudice here. Okay? A three-day trial, 30 to 40 hours of attorney time for two lawyers in court with all of the other people in the courthouse and all of the prep time and the fact that she gets to observe our case. I think the cases have found that there's significant prejudice. And, you know, the appropriate remedy that was discussed by Judge Kavanaugh, one of the other remedies discussed in the hearing was possibly sanctioning her for attorney's fees. Well, her lawyer said that she would go bankrupt. Well. So that's not an appropriate. I mean, so what happens then? That may be an inevitable result, unintended consequences. And that doesn't compensate my client for what happened in court to now have to go and re-spend all that money and try this case again. Did you ask as an alternative a dollar? I did, Your Honor. How much was the dollar? I did not give the judge a specific dollar amount. I can tell the court that it's tens of thousands of dollars. So I look at a 10-hour day in court, it's $4,000 just for me. And that's at a discounted rate. Did the district court go through with counsel the possible, the Poulos case, what, the six factors? The district court, in its opinion, specifically outlined the six factors of the Poulos case and why. Was Poulos an appropriate precedent to apply to what occurred here? I was trying to fit Poulos into what occurred here because in the district court's opinion, the Poulos analysis follows a discussion of spoliation. Yes. And it seemed to me that if this constitutes spoliation, if it can fit within the nature and principles of spoliation, that the spoliation analysis and a determination that that occurred in and of itself should be enough, and then that the next question is simply one of remedy. Would you agree with that? Your Honor, I agree that there was spoliation. I think the case law is clear that withholding key evidence, even though you don't destroy it, could be spoliation. And certainly she withheld it from her lawyer, her own lawyer, throughout the entire case and attempted to withhold it again at trial when she first said she didn't look for it, it doesn't exist. And with regard to the Poulos factors, my reading of the case law was that the judge needed to go through that analysis if there was going to be the sanction of dismissal. I think Poulos, which I know a little bit about, applies whenever there's a dismissal. I think that's what it says. That was my understanding of the case law. I don't think it's limited to a discovery violation. It's used by lawyers. We checked. It's been cited 23,000 times. And, Your Honor, to argue that there was no discovery violation here, to me, stretches the rules beyond any meaning. Ms. Bull had an obligation before the case, when she filed a workers' comp lawsuit against UPS, to maintain and preserve those documents. They were the key to that case or the key to this case. She identified them in Rule 26. She identified them in discovery. She produced clear copies of them. I don't know how she made clear copies of them without having the originals midway through discovery, but she managed to make clear copies of them halfway through the case. That's an interesting point. I haven't heard of that. So there was clearly an obligation to locate and preserve those documents under Rule 26. She either didn't do that or was dishonest about it. And how that is not a discovery violation, I don't know. Okay? And, Judge, you know, every lawyer on a case like this, if you're trying a case, and the crucial evidence in the case on whether or not Mrs. Bull reasonably engaged in a good-faith interactive process with UPS, rests on two doctor's notes that we suspect one of them was forged. In fact, the doctor said he never authorized the second note. She was never examined. Somehow her limitations were changed. We still don't know who signed the note. When that's the key evidence, and I ask for the originals to look, it's obvious why I want to look at them. It's the linchpin of the case. And I don't want to be surprised by something that might be written on the back of the document or on the bottom of the document because it was cut off at trial. Not having that there significantly prejudiced me. And now we go back, and what's going to be the remedy? I still don't know what's on the bottom of the document. And I certainly don't want the original to be in the case because she shouldn't have two bites at the apple now. She didn't bring it to court the first time. Any questions, Your Honor? Well, you still have time. Very rare. I was told once that less is more, Judge. Okay, I don't have any more questions. Okay, thank you. How do you answer the point, which I hadn't really thought of, that you produced, your client produced, copies of documents that she said she didn't have? No, well, I assume that she made copies much earlier when she first got those documents, and that's what she kept. You mean, and she just kept the copies around and not the originals? Yeah, that she put the originals away. But, Your Honor, if I can just address... Well, wouldn't she know where she put them away, if she put them away? Well, Judge, I mean, we're talking about a layperson, all right, who is a part-time employee at UPS. I mean, so she, I mean, I can certainly fault her record-keeping, but, you know, things do get lost, and people think that they put something somewhere. I lose them every day on my desk, right in front of my desk. So this idea that she lied to me, I think is unduly harsh. Really? Yes, yes, I do. You think that she didn't lie to you? I know she did not lie to me. She told you she couldn't find them? I know she did not lie to me. She did not lie to me. All right, she was mistaken. Well, you and I have a different definition of lying. All right, but the important point, I think, is that everything that counsel said here today, again, is an ad hoc or post hoc rationalization, all right? He told you that he did ask for these in discovery? That is absolutely false. What he produced was a- What about the September 27, 2006 letter? That's a letter from UPS to the union that predates this litigation by eight months. Yeah, what does it ask for? Is it in the record? You said it was in the record. It's a very big record, appendix. It is a big record. There's thousands of pages. Yeah, okay, where is it in the appendix? Okay, thanks. All right, you know you're not on the tape because you're not there. I'm sorry. Okay, so we'll get you later. No, go ahead. Okay, so they're claiming that their production- We asked for all communications as part of their production between the union and the company regarding this bull. They produced lots of correspondence. One of them is a letter that predated the litigation by eight months. Now, that's somehow- What difference does it make that it predated the litigation? Well, I've never had it- I think it makes a difference because it's not a discovery violation. There's no discovery request. All right, they had all of their opportunities to conduct discovery. But I thought your point was that they never- You asked for it, that you didn't- They weren't asked for it. Does it make a difference? Yes, it makes all the difference because counsel is standing here telling you that he was interested and wanted to see this original note. That cannot be farther from the truth. He had no interest in viewing this original note. Did you know that there was an authenticity issue? I knew that they- Well, this is the issue. No, no, that's a simple question. Did you know that there was an issue as to the authenticity of the doctor's note? No, I did not know that there was an- You did not know going into trial that there was an authenticity issue as to the second of the two doctor's notes? No, because the testimony in the record was from Dr. Farber that that second note came from his office. He didn't sign it. He also said he did not sign it. That's right. He said it was not his signature. That's right. He said that in his deposition. That's right, but he also said- I asked him, did this come from anybody? The implication is somehow that she, what, stole a script and forged his signature? Is that the implication that they're trying to make? That is not an implication that was ever reasonably made in this litigation. All right? The evidence was clear and undisputed. She went and got treated once. I'm sorry. She went and got treated once, got her original note. They told her that she needed more, the 70 pounds. She called the office, told them she needed another note. She came in. It was sitting there waiting for her, and she picked it up, and that's what happened. Did he say something like he wouldn't have signed a note like that without doing another examination? He did say that. So isn't that a question of the- doesn't that implicate the authenticity of the note? No, it implicates his- it implicates their internal procedures, but it doesn't implicate the authenticity because he also testified that it is highly improbable that this note came from any place else except from his office. Given all of that, and even if I concede to you, as I'm prepared to do, that there was not a formal discovery request pursuant to the rules of civil procedure as they apply to discovery, I don't see how you can say once you are presented with the trial subpoena that you don't think there's an authenticity question anymore. I do not- so what are we saying then? No, you can't ask questions. He asks the questions and you have to answer them. I mean, I meant that rhetorically, Your Honor. I'm sorry. Okay. So then her claim is appropriately dismissed or she's appropriately sanctioned for noncompliance with a noncompliant trial subpoena that had- Well, speaking of post-hoc, Mr. Zatucni, which you've accused your adversary of, my reading of the records suggests that your contention regarding the technical deficiencies in the trial subpoena, which the district court concedes, were also presented post-hoc. They were never raised pre or during trial or until this controversy relative to dismissal was taken up before the district court. Isn't that right? That is correct, Your Honor, but that's only because we didn't know of the existence of the originals. That's why. Okay. I mean- Your red light is on.  Okay. Thank you, Your Honor. Thank you. I think we've heard this. Just give us the page we'd like to- The page that I cited to Your Honor prior was the Supplemental Appendix, Volume 1, page 58. May I give- Wait, wait, wait, wait. No, you can't argue because- I don't want to argue. I just want to give another page to the court. Okay. Submap, page 58. Go ahead. Another- The question posed was whether Mr. Zatucni knew about the authenticity issue going into trial on the defendant's Supplemental Appendix, Volume 1, page 52. Quoting from his brief, it is clear that defendant intends to question the authenticity of both these notes. Okay. So- Yeah, no argument. Thank you, Judge. Thank you. Okay. We'll take this matter under advisement and we'll move to R&J Holding Company versus RDA.